# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 22, 2019

No. 18-50494

Lyle W. Cayce
Clerk

CHERRY KNOLL, L.L.C.,

      Plaintiff - Appellant

v.

STEVEN JONES; HDR ENGINEERING, INCORPORATED; THE CITY OF LAKEWAY,

      Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, DAVIS and ELROD, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Plaintiff-Appellant, Cherry Knoll, L.L.C., appeals the Rule 12(b)(6) dismissal of its complaint against Defendants-Appellees, the City of Lakeway, Texas, City Manager Steven Jones, and HDR Engineering, Inc. For the reasons set forth below, we REVERSE and REMAND.

**I.**

Cherry Knoll alleges the following facts in its Second Amended Complaint, which, at the motion to dismiss stage, we assume to be true.[1] In

---

[1] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

No. 18-50494

November 2006, Cherry Knoll acquired 27.7 acres in the City of Lakeway ("the City") and sought to develop the property for mostly single-family residential lots, with a small portion for commercial purposes. Larry Aiken, a developer and member of Cherry Knoll, spearheaded the company's development efforts. In September 2007, the City approved a subdivision plat for the property, but that plat was never recorded. Cherry Knoll subsequently modified its plans for the property, determining that the property should be platted in two subdivisions, one commercial and the other residential.

By the spring of 2008, however, the development project was having financial difficulties, and Aiken advised the City Engineer, Paul Duncan, that Cherry Knoll was placing the project on hold until further notice. Aiken and Duncan agreed that it was best to preserve the progress that had already been made, in case the project was later resurrected. Therefore, Cherry Knoll prepared two Subdivision Plats, one commercial and one residential, that reflected the configuration of the proposed development project as it existed at that time. Aiken delivered the plats to Duncan, who agreed to hold the plats until such time (if any) that Cherry Knoll was able financially to proceed with the project. Cherry Knoll specifically alleges: "At no time whatsoever did Aiken authorize Duncan to record the Subdivision Plats, and at no time did Duncan suggest that the City might do so."

The development project was never resurrected. Aiken ultimately sold his interest in Cherry Knoll in April 2009 to two of its other members. Since then, Cherry Knoll has explored other options for the property, having determined that single-family residential use is no longer feasible because of significant development of the surrounding area, including the 2012 opening of Lakeway Regional Medical Center, a large medical campus located a few hundred feet from the property.

2

No. 18-50494

In 2013, approximately five years after Aiken delivered the Subdivision Plats to Duncan, the City began moving forward with a planned improvement of Flint Rock Road, which is adjacent to Cherry Knoll's property.  The City hired an independent contractor, Schwendinger Advisory Services, L.L.C., for consulting and project management services.  The City hired another independent contractor, HDR Engineering, Inc. ("HDR"), to provide a wide range of services for the road improvement project, including "land acquisition" services.  Specifically, HDR was hired to handle all aspects of the City's acquisition of property from the various landowners affected by the City's road project, from the initial contact with the landowner through the closing of the sale.  HDR also was responsible for obtaining an independent condemnation appraisal report for the City.[2]

On March 12, 2014, the City wrote a letter to Cherry Knoll, stating that its road improvement project made it "necessary for the City of Lakeway to acquire a portion of property [Cherry Knoll] own[ed]."[3]  As detailed in the survey attached to the letter, the City needed to acquire 1.741 acres, described as Parcel 16.  The letter also explained the steps the City would have to complete in acquiring the property, starting with an appraisal of the property.  The letter stated that the City was required by law to provide Cherry Knoll with a copy of the appraisal and that, after the appraisal was completed, an agent from HDR would contact Cherry Knoll to discuss an offer.  The letter also enclosed a summary of the state statutes governing the process for the

---

[2] Under state law, such reports establish the minimum amount a would-be condemnor must offer to pay the landowner for the affected property prior to instituting a condemnation proceeding.  TEX. PROP. CODE § 21.0113(b)(4), (5).

[3] This Court may review documents attached to the complaint in an appeal of a Rule 12(b)(6) dismissal.  *See Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019).

No. 18-50494

City to acquire the property entitled "State of Texas Landowner's Bill of Rights."

On March 25, 2014, Schwendinger emailed HDR Vice President, Teri Morgan, indicating that he had made contact with the principals of Cherry Knoll, Kay and Jim Wolverton. Although the City had sent a letter to Cherry Knoll stating that the process for acquiring the property would begin with an appraisal, Morgan replied that it was her understanding that she should discuss "waiving the appraisal and a donation of the property" with the Wolvertons. However, Schwendinger cautioned Morgan that they might "want to strategize a bit before [they] start[ed] the process with the Wolverton's [sic]." Specifically, Schwendinger explained:

> While we think there is a path to dedication, I don't think that has been discussed with [the Wolvertons]. We may need to have a short conference call with [City Manager] Steve [Jones] on this because as I understand it, they came to the city a few years ago and submitted a plat but then never had it recorded. We need to know when that was and what was said or implied regarding any dedication.

Cherry Knoll alleges that this email shows that Schwendinger and Jones were aware that, several years previously, Cherry Knoll had submitted a plat to the City which Cherry Knoll never had recorded. Cherry Knoll further alleges that the email shows that Jones and Schwendinger understood that the unrecorded plat included a dedication to the City of part of Cherry Knoll's property, which overlapped with some of the property the City needed for its road project. Cherry Knoll alleges that, in fact, the commercial subdivision plat Aiken submitted to Duncan in 2008 included a swath of land, described as a "future" right of way, that overlapped considerably with Parcel 16. Specifically, "[t]he overlapping area comprise[d] approximately 48% of Parcel 16."

4

No. 18-50494

On or about April 7, 2014, Morgan called Kay Wolverton regarding the City's acquisition of Parcel 16. They discussed Cherry Knoll's prior efforts to develop the property and the "approved plats with the property to be set aside for [a] roadway." Wolverton "confirmed that the plat was never recorded and [the] roadway was never dedicated to the City." Morgan asked whether Wolverton would consider donating Parcel 16 to the City. Wolverton "did not think so" because potential buyers of Cherry Knoll's property wanted the City to change the zoning, but "were told there was no way it would ever happen." Morgan, Schwendinger, and Jones discussed the conversation that Morgan had with Wolverton, and Jones instructed Morgan to continue with the appraisal and offer process as outlined in the City's letter to Cherry Knoll. On April 8, 2014, Morgan emailed Wolverton providing a summary of the appraisal and offer process that would follow and attached another copy of the "Landowner's Bill of Rights."

On July 21, 2014, the appraisal firm (Atrium Real Estate Services) issued its appraisal report for Parcel 16. The report recommended a total compensation amount of $381,266. This first appraisal report was never sent to Cherry Knoll, and Cherry Knoll alleges that it only learned of the report's existence through discovery in this matter.

On August 5, 2014, Schwendinger emailed Jones stating that if the appraisal of Parcel 16 "stood as currently appraised," then they "would be forced into looking into other cost savings opportunities." Schwendinger suggested re-designing the road to reduce the amount of land needed from Cherry Knoll's property. Schwendinger stated that they could discuss this option at an upcoming meeting "regarding the appraisal."

On August 6, 2014, a meeting occurred at Lakeway City Hall to discuss the appraisal of Parcel 16. Morgan emailed a meeting notification to Jones and Schwendinger, as well as other representatives of HDR and Atrium. The next

5

day, Troy Anderson, the City's Building and Development Services Manager, sent a letter to Cherry Knoll stating the following:

> It has recently come to my attention that the approved subdivision plat documents known as CHERRY KNOLL FARMS SUBDIVISION PLAT and CHERRY KNOLL FARMS COMMERCIAL PLAT were found in our offices, having not been filed. Please allow this letter to serve as notice that the plat documents have since been executed by Water Control and Improvement District (WCID) No. 17, the Code Official, the Zoning and Planning Commission Chair and the Mayor and will be filed with the Travis County Clerk in the next five (5) to seven (7) days. We apologize for any inconvenience this may have caused you.
>
> If you have any questions or comments please feel free to contact me directly at 512-314-7542 or via e-mail at troyanderson@lakeway-tx.gov.

In response, on August 12, 2014, Jim Wolverton emailed Anderson the following message:

> Mr. Anderson: Let this E-Mail serve as notice, That the Owners of Cherry Knoll do not wish to have you file the plats in question.
> We find it interesting that The City of Lakeway now chooses to act on a SEVEN (7) year old plat which was not filed by the current owners, and furthermore, we cannot find any fee paid by the owners associated with the plat. The owners request a meeting with you and the City to discuss this issue. ONCE again do not file The PLATS in question.

Wolverton did not receive a response to his email. Cherry Knoll alleges that Wolverton tried to reach Anderson over the ensuing days by phone and email, but Wolverton's messages were not returned.

On the same day that Wolverton emailed Anderson, Schwendinger emailed HDR representative Bob Leahey (with a copy to Jones and Morgan) explaining the City's decision to record the Subdivision Plats. Schwendinger wrote:

> After lots of consideration and legal counsel the city has decided to record the 2008 plat which included a dedication of a right of way for [Flint Rock Road].  It is not in the exact location but certainly overlaps . . . . We sent notice to the property owner last Friday of our intent to record the plat and we intend to record it this Friday. We have concluded that we need to get them to the table to discuss a resolution and this creates pressure for them to act. . . . Part of our dilemma in determining our position is that it is apparent that Atrium, the appraiser, was not given documents which included key features of the property that the city feels materially impact the valuation of parcel #16.  We are talking here about the flood plain and the power line easements plus other aspects.  So it seems that Atrium will need to rework the appraisal once that information is provided to them. We expect the cost per square foot to be reduced for the [right-of-way] take once all the aspects are incorporated.  Plus once the plat is recorded, we would be in a position to better negotiate a settlement or at least have to only buy the net difference between the 2008 dedication and the current [right of way] take.

On August 15, 2014, Morgan contacted Kay Wolverton to set up a meeting "in response to [Jim Wolverton's] communications regarding the plat and sale of the property and [right of way]."  On August 18, 2014, although aware of Cherry Knoll's opposition and without meeting with the Wolvertons, the City filed the Subdivision Plats in the Travis County Official Public Records.

Morgan (as instructed by Schwendinger) requested Atrium to complete another appraisal of Parcel 16, but this time using "the flood plain and buffer zones outlined on the [recently recorded] plat for appraisal and valuation purposes," instead of the FEMA flood plain studies apparently used in the first appraisal.  Considering the flood plain data in the recorded Subdivision Plats, the second appraisal report, issued on August 22, 2014, recommended a total compensation amount of $262,956 for Parcel 16.  This appraisal report was not disclosed to Cherry Knoll, and Cherry Knoll alleges that it only learned of the report's existence through discovery in this case.

No. 18-50494

On August 29, 2014, Schwendinger, Jones, and Morgan met with Cherry Knoll representatives. The City did not disclose the appraisals of Parcel 16 completed as of that date. Instead, the City made an offer to purchase the parcel for approximately $130,000. The meeting did not result in any type of agreement between the City and Cherry Knoll.

On August 31, 2014, Schwendinger emailed Leahey to request a new survey and appraisal. Specifically, Schwendinger stated:

> As a result of our recent meeting with representatives of Cherry Knoll LLC it now seems that we will need to go ahead and conduct a survey and obtain an appraisal on the portion of the required [right of way] which was not included in the prior dedication.

Schwendinger's email included a table showing the reduced amount of acreage to be surveyed and appraised. This smaller tract of land was referred to as Parcel 16A and was a little over half the size of Parcel 16.

The appraisal report for Parcel 16A recommended a total compensation amount of $134,532. On October 13, 2014, City Manager Jones sent a letter to Cherry Knoll extending the City's written "initial offer" to buy Parcel 16A for the appraised amount and enclosing a copy of the appraisal. Cherry Knoll did not accept the City's initial offer or its "final offer" for the same amount. On January 21, 2015, the City filed a condemnation suit in state court seeking ownership of Parcel 16A for the road improvement project.

Just prior to receipt of the City's final offer, Cherry Knoll entered into a contract to sell its property to Coastal Rim Properties, Inc. for $4.2 million. However, Coastal Rim wanted to develop the property into a "mixed-use" project, which required the City to change the zoning classification for the property. Therefore, the purchase contract was contingent upon the zoning change and other governmental approvals. The contract also authorized Coastal Rim to take the lead in negotiations with the City over the acquisition

No. 18-50494

of the land needed for its road project and the removal of the Subdivision Plats from the public record.

The City and Cherry Knoll ultimately entered into a settlement agreement, entitled "Memorandum of Understanding," in which the City agreed to purchase Parcel 16 for $240,659. The City further agreed to vacate the Subdivision Plats from the public record and terminate the condemnation suit. Cherry Knoll agreed to allow the City early entry onto the property and to execute a release in favor of the City.

Cherry Knoll, however, alleges that the settlement agreement is invalid because Cherry Knoll entered into the agreement based on "at least three mistaken beliefs and understandings of material fact." Cherry Knoll asserts that these mistakes were innocently shared by the City (mutual mistake) or alternatively were fraudulently induced by the City. First, Cherry Knoll believed that the filing of the Subdivision Plats was effective as a matter of real property law and resulted in the City's ownership of and immediate right to possess a portion of Parcel 16. Second, Cherry Knoll believed that the City had no appraisal for Parcel 16. Third, Cherry Knoll believed that Jones had actually consulted with the City Council about rezoning the property for development by Coastal Rim and that the council was at least willing to consider the possibility of rezoning in good faith.

## II.

In its complaint, Cherry Knoll asserts numerous federal and state law causes of action based on the above facts. Pertinent to the issues on appeal, Cherry Knoll asserts a claim against the City under 42 U.S.C. § 1983 for violating its rights to procedural due process, substantive due process, and equal protection. Specifically, Cherry Knoll contends that by filing the Subdivision Plats without its consent and over its objection, the City deprived Cherry Knoll of its right to determine the use and configuration of its property,

9

deprived Cherry Knoll of its right to decide whether and when to dedicate property to public use, and imposed an unauthorized, burdensome, and costly encumbrance on the property. Alternatively, Cherry Knoll asserts § 1983 claims against City Manager Jones and HDR.[4] It contends that these defendants agreed upon and jointly executed a plan to file the plats unlawfully for the specific but hidden and coercive purpose of driving down the cost of acquiring Parcel 16 and leveraging Cherry Knoll into a sale on favorable terms. With respect to Jones, Cherry Knoll specifically alleges that he is not entitled to qualified immunity. As to HDR, Cherry Knoll contends that although HDR is a private contractor, it "acted under color of law."

All of the defendants filed motions to dismiss pursuant to Rule 12(b)(6). The district court, adopting the magistrate judge's report and recommendation, granted the motions. The district court determined that the City was entitled to dismissal because the allegations did not demonstrate a municipal "policy or custom" making the decision to file the plats attributable to the City, that Jones was entitled to qualified immunity, and that HDR should be dismissed because it was not part of a conspiracy to file the Subdivision Plats over Cherry Knoll's objections. Because the federal claims were subject to dismissal, the district court declined to exercise supplemental jurisdiction over the state law claims and dismissed all claims without prejudice. Cherry Knoll timely appealed.[5]

### III.

As set forth by the Supreme Court, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

---

[4] Cherry Knoll also asserted claims against three other City officials (Troy Anderson, David DeOme, and Ron Massa), James Schwendinger, and Schwendinger Advisory Services, L.L.C.

[5] Cherry Knoll appeals only the dismissal of the City, Jones, and HDR.

claim to relief that is plausible on its face.'"[6]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[8] "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[9]  We review dismissals under Rule 12(b)(6) de novo.[10]

### A. Cherry Knoll's 42 U.S.C. § 1983 Claim Against the City.

In *Monell v. New York City Department of Social Services*, the Supreme Court held that municipal liability under § 1983 is limited to deprivations of federally protected rights caused by action taken "pursuant to official municipal policy of some nature."[11]  In *Pembaur v. City of Cincinnati*, the Court determined that this requirement may be satisfied by "a single decision by municipal policymakers under appropriate circumstances."[12]  Specifically, the Court held "that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."[13]

---

[6] *Ashcroft,* 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[7] *Id.* (citation omitted).

[8] *Id.* (citation omitted).

[9] *Id.* (citation omitted).

[10] *Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019).

[11] 436 U.S. 658, 691 (1978).  The Court also specifically concluded that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Id.*

[12] 475 U.S. 469, 480 (1986).

[13] *Id.* at 483 (citation omitted).

No. 18-50494

As stated above, Cherry Knoll asserts a § 1983 claim against the City for violating its rights to procedural due process, substantive due process, and equal protection by filing the Subdivision Plats without its consent and over its objection.  Cherry Knoll alleges that this single decision was made "by City authorities at the highest level—after careful consideration and legal advice." Cherry Knoll further alleges that the Lakeway City Council has "final policymaking authority in substantially all areas of City governance, including the areas of land acquisition and public works projects."  It asserts that the "decision to record the Subdivision Plats and wield them as leverage in the land-acquisition effort was made and approved by the City Council," which made the decision initially in private, and then "later expressly ratified" its decision in a public meeting.

As support for its allegations, Cherry Knoll points to the various exhibits attached to its complaint, including: (1) Schwendinger's August 12, 2014 email to HDR representative Bob Leahey, stating that "[a]fter lots of consideration and legal counsel the city has decided to record the 2008 plat," (2) the City's response to requests for admissions suggesting that the City Council was consulted about filing the Subdivision Plats, (3) the City's admissions that it "caused the Recorded Subdivision Plats to be recorded on August 18, 2014" and that it was aware that Cherry Knoll was opposed to the plats' recordation when it did so, (4) documentary evidence showing that the City Council used the leverage that the recorded Subdivision Plats created by authorizing the filing of a condemnation suit to acquire Parcel 16A, instead of Parcel 16, and (5) the City Council's ratification of the settlement agreement with Cherry Knoll. Furthermore, this Court notes that the Subdivision Plats indicate that they

12

were "approved and authorized for record by the City Council of the City of Lakeway."[14]

Although the district court acknowledged that Cherry Knoll had alleged policymaker involvement, it determined that Cherry Knoll "implausibly attempt[ed] to elevate the decision it alleges was made by staff to policy made by the City Council." We respectfully disagree. Cherry Knoll's well-pleaded factual allegations make it plausible that the City Council made the deliberate decision in 2014 to file the Subdivision Plats over Cherry Knoll's objection and to use the filed plats as leverage in its land-acquisition effort. These allegations satisfy the standard for official municipal policy under *Pembaur*, and the district court erred in finding otherwise.

### B. Cherry Knoll's § 1983 Claim Against City Manager Jones.

In the alternative to its municipal liability claim under § 1983 against the City, Cherry Knoll alleges that City Manager Jones, along with Schwendinger and HDR, "agreed upon and jointly executed a plan by which the Subdivision Plats would be filed unlawfully, without Cherry Knoll's permission and over its objection" to drive down the cost of Parcel 16 and leverage Cherry Knoll into a sale on favorable terms, all in violation of § 1983. In response, Jones moved to dismiss on the basis of qualified immunity.

"Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known."[15] "In this circuit, the qualified immunity defense

---

[14] This is inconsistent with Cherry Knoll's alternative allegation that the City Council's approval had been falsified. However, Federal Rule of Civil Procedure 8(d)(2) allows for alternative pleading.

[15] *Gates v. Tex. Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 418 (5th Cir. 2008) (citations omitted).

involves a shifting burden of proof."[16]  The defendant official must first satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority.[17]  "An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity."[18]  Once the defendant establishes that the challenged conduct was within the scope of his discretionary authority, the burden then shifts to the plaintiff to rebut the qualified immunity defense.[19]  In evaluating whether the plaintiff has rebutted the defense, we first determine whether the plaintiff has alleged the violation of a clearly established constitutional right.[20] If the right was clearly established at the time of the incident at issue, we next determine whether the defendant's conduct was objectively reasonable in light of the clearly established legal rules at the time of the alleged violation.[21]

In this case, the threshold inquiry ends our analysis because Jones has not satisfied his burden to show that the challenged conduct was within the scope of his discretionary authority.[22]  Cherry Knoll asserts that under Texas law, the right to subdivide land belongs to the landowner.[23]  The landowner must prepare a plat and submit it to municipal authorities for approval.[24]  The City has enacted ordinances outlining its approval procedure.[25]  As Cherry Knoll points out, the ordinances require the "applicant" for plat approval to have the plat recorded with the county clerk within sixty days after the City

---

[16] *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992).

[17] *Id.*

[18] *Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992).

[19] *Salas*, 980 F.2d at 306.

[20] *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 490 (5th Cir. 2001).

[21] *Id.*

[22] *See Salas,* 980 F.2d at 306.

[23] *See* TEX. LOC. GOV'T CODE ANN. § 212.004 (providing procedures "owner of a tract of land" must follow in order to subdivide property).

[24] *See id.* § 212.008–010.

[25] *See* Lakeway City Code §§ 28.03.001-010.

Council approves a final plat.[26]  The ordinances further require the applicant to file a corporate surety bond or letter of credit after council approval but prior to recordation of the plat.[27]  Cherry Knoll asserts that under state law and the City's charter and ordinances, the City (and its officials) had no authority to file plats affecting private property without the consent of the landowner.

In response, Jones points to the various City ordinances governing the plat approval process.  Although these ordinances delineate the various steps a landowner/applicant must complete in order to obtain the City's approval of a subdivision plat, none of the ordinances authorize the City, or any of its officials, to file approved plats.  The ordinances also do not indicate that the City's plat approval process includes its filing of an approved plat, or that when a landowner requests approval of a plat, he is thereby also giving the City or any of its officials the authority to file the approved plat.

Jones has failed to meet his burden of showing that the filing of the Subdivision Plats was within the scope of his discretionary authority.  Therefore, the district court erred in determining that Jones was entitled to the protection of qualified immunity at the Rule 12(b)(6) stage.

**C. Cherry Knoll's § 1983 Claim Against HDR.**

In its complaint, Cherry Knoll asserts that HDR "acted under color of law" as contemplated by the "joint activity test."  Under Supreme Court precedent, "to act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State.  It is enough that he is a willful participant in joint action with the State or its agents."[28]  "Private persons,

---

[26] *See id.* § 28.03.003(m).

[27] *See id.* §§ 28.03.003(n), 28.07.006.

[28] *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

jointly engaged with state [or municipal] officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions."[29]

The district court determined that Cherry Knoll's allegations against HDR did "little more than demonstrate that the City had indeed engaged HDR" as a consultant on the road project and that HDR "acted on instructions and information provided by Jones and the City on steps that were ancillary to the legitimate goals of their engagement." The district court concluded that the allegations "d[id] not plausibly give rise to the conclusions that the Subdivision Plats were filed over Cherry Knoll's objection as a result of a conspiracy concocted by Jones, Schwendinger, and HDR."

As Cherry Knoll argues, however, its complaint specifically alleges that HDR was more than a consultant; it was hired by the City to handle all aspects of the City's acquisition of property from the various landowners affected by the City's road project. The documents attached to Cherry Knoll's complaint reflect that HDR representative Morgan was informed of the history of Cherry Knoll's prior efforts to develop the property and the fact that a plat had been submitted to the City but never recorded; was told by Schwendinger (who was informed by Jones) of a potential "path to dedication" during Morgan's early negotiation efforts with Wolverton; was present at the meeting with Jones and others at Lakeway City Hall when the first appraisal was discussed, which meeting occurred the day before the City sent its letter informing Cherry Knoll that it intended to file the Subdivision Plats; contacted Kay Wolverton "in response to" Jim Wolverton's communications to the City objecting to the filing of the Subdivision Plats; and scheduled a meeting with the Wolvertons to take place *after* the City filed the Subdivision Plats over Cherry Knoll's specific objection.

---

[29] *Id.* at 27– 28 (citations omitted).

No. 18-50494

We find that Cherry Knoll's well-pleaded factual allegations and supporting documents make plausible its claim that HDR was a "willful participant in joint action" with Jones and Schwendinger for purposes of § 1983. The district court erred in determining otherwise.

## IV.

Based on the foregoing, the district court's judgment dismissing Cherry Knoll's § 1983 claims against the City of Lakeway, City Manager Steven Jones, and HDR Engineering, Inc., is REVERSED, and this matter is REMANDED.[30] This Court further REINSTATES Cherry Knoll's state law claims over which the district court may now exercise supplemental jurisdiction under 28 U.S.C. § 1367(a).

---

[30] We emphasize that our ruling today is made within the confines of the plausibility standard under Rule 12(b)(6) and does not preclude defendants from moving for summary judgment at an appropriate time, if the evidence produced in discovery so warrants.