# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 7, 2025

Lyle W. Cayce
Clerk

———————

No. 23-60165

———————

Philip Gerard Turner,

*Plaintiff—Appellant*,

*versus*

Akillie Malone Oliver, *in Her Individual Capacity*,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:21-CV-289

———————————————————————

Before Davis, Southwick, and Ho, *Circuit Judges*.

Per Curiam:[*]

This litigation arises from the indictment of a school principal. According to the complaint, the district attorney was engaged in a personal vendetta against the principal, procured his indictment, and then told school district trustees that he had been "validly indicted." The school district fired the principal. After the indictment was dismissed, the principal sued the

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

district attorney for violating his federal constitutional rights and for two state-law torts. The district court dismissed all claims. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Philip Turner was principal of Yazoo County High School from 2018 through 2020. Akillie Malone Oliver is the District Attorney for the district that encompasses Yazoo County, Mississippi. Important to Turner's claims of malice, Oliver's son attended Yazoo County High School during Turner's tenure as principal. In early 2019, Turner suspended Oliver's son, and Oliver went to the school to object to the suspension. Because this is an appeal from an order dismissing Turner's complaint, we "accept as true all well-pleaded facts and construe the complaint in the light most favorable to the plaintiff." *Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023). Our recitation of facts employs that acceptance.

According to Turner's complaint, "Oliver became so loud and disrespectful that [Turner] feared violence" and had her escorted off school property. Turner claims that later events were the result of Oliver's desire to retaliate for the suspension of her son.

In August 2019, another Yazoo County High School student accused the school resource officer of choking him during a disciplinary incident. Upon learning of this accusation, Oliver and an investigator from the District Attorney's Office went to the school, where Oliver interviewed witnesses and took pictures.

Turner was not present during the alleged choking incident, but he removed the student who was the alleged victim from the gymnasium for disruptive behavior, immediately notified the student's parents and the school superintendent of the possible injuries, and called a youth court judge. Oliver referred to Turner as a "possible defendant" during the later probable cause hearing related to charges against the school resource officer. Turner

was to testify at the hearing, but his complaint states that being told he might be a defendant caused him to exercise his right against self-incrimination and refuse to testify.

In January 2020, Oliver convened a grand jury and obtained an indictment against Turner, charging him as an accessory after the fact to felony child abuse. The sole factual basis for the charge was that Turner exercised his right not to testify. Turner filed a motion in a Mississippi trial court to recuse Oliver and her office from prosecuting him because of Oliver's "animosity toward" Turner. On March 16, 2020, the court granted the motion and disqualified Oliver and her entire office, finding an "appearance of impropriety exist[ed] and it [could] easily be judged that [Turner] may not receive a fair and impartial trial under the circumstances." The Mississippi Supreme Court denied an interlocutory appeal from the order on June 30, 2020.

The Mississippi Attorney General was then appointed to prosecute Turner's case. After completing its own investigation, the Attorney General's Office decided not to prosecute because "there [was] insufficient evidence to support the charge." The Attorney General's Office filed "its motion to *nolle prosequi* with prejudice the indictment" of Turner in October 2020.

On March 3, 2020, just before Oliver and her office were removed from the prosecution, Oliver informed the trustees of the Yazoo County School District that Turner had been "validly indicted" for the crime of accessory after the fact. This communication is the central event in Turner's tort claims, and we will refer to it as the "March 2020 statement." The school district terminated Turner as principal after hearing Oliver's March 2020 statement.

In April 2021, Turner filed this suit in the United States District Court for the Southern District of Mississippi. Turner's Second Amended Complaint is his live complaint, and the only defendant is Oliver in her individual capacity. Turner asserted two 42 U.S.C. § 1983 claims arising from his indictment. He alleged Oliver violated the Fourth Amendment by causing his arrest without probable cause and the Fifth Amendment by retaliating against him for exercising his right against self-incrimination. Turner also brought state-law claims of slander and defamation, malicious interference with employment, and malicious prosecution against Oliver.

Oliver filed a motion to dismiss all claims for failure to state a claim. The district court granted the motion. It concluded Oliver was entitled to absolute and qualified immunity on the Section 1983 claims. The district court dismissed the slander and defamation claim because Turner conceded it was time-barred. In dismissing the remaining state-law claims, the district court held that Turner had abandoned the malicious prosecution claim, and that Turner's pleadings on the malicious interference with employment claim were not plausible. Turner timely appealed.

## DISCUSSION

We review *de novo* the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017). To avoid being dismissed, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Phillips v. City of Dallas*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The factual allegations must support more than the possibility of misconduct and "must make relief plausible, not merely conceivable." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quotation marks and citation omitted).

When analyzing motions to dismiss on the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The original complaint in this case attached the following documents as exhibits: the grand jury indictment charging Turner as an accessory after the fact; the state trial court order granting Turner's motion to disqualify Oliver from prosecuting the case against Turner; the Mississippi Supreme Court order refusing to hear an appeal from the recusal; and the Mississippi Attorney General's motion to *nolle prosequi* the indictment with prejudice. Each document is referenced in but not attached to the second amended complaint. We will consider these documents in our review of the order dismissing the complaint because they provide dates for each relevant action and some specific textual language.

Turner briefs five issues that we collapse and discuss as two issues. The two are these: (1) does Oliver have qualified immunity from the Section 1983 claims for making the March 2020 statement, and (2) did Turner sufficiently plead a claim of malicious interference with his employment?

## I.    *Qualified Immunity*

This litigation presented arguments about both absolute immunity and qualified immunity. Abandoning some of his claims, Turner now concedes that a prosecutor is entitled to absolute immunity from a claim under Section 1983 for her actions in obtaining an indictment. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268–69 (1993). Consequently, we need not analyze absolute immunity.

Under qualified immunity, government officials are protected from individual liability for performing "their discretionary functions when 'their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 268 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A key question in this case is a preliminary one. Qualified immunity is potentially applicable only if "the challenged conduct was within the scope of [the public official's] discretionary authority." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019). We must determine if the March 2020 statement was within Oliver's discretionary authority.

We examine the claims to which the district court held that qualified immunity applied. The district court held that a prosecutor is entitled only to qualified immunity for actions taken to investigate an offense and that Oliver was entitled to that immunity for her investigation. Turner does not argue there was error in that determination.

Turner does argue, though, that qualified immunity should not be granted to Oliver on the Fifth Amendment claim based on Oliver's March 2020 statement to the school district trustees. The district court's discussion of that claim was brief and somewhat indirect. The district court wrote, Turner "specifically alleges that Defendant Oliver retaliated against [Turner] for his exercise of his right against self-incrimination." The court then stated that if a defendant asserts qualified immunity, "the plaintiff has the burden of establishing the proof and arguments necessary to overcome it." Next, the opinion cited several precedents, each followed by a parenthetical description of the holding; in each, *absolute* immunity was denied. The one relevant here referred to prosecutors' speaking to the media:

> *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 [(2009)] ("We have held that absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, . . . when the prosecutor makes statements to the

press, . . . or when a prosecutor acts as a complaining witness
in support of a warrant application.'").

Immediately after the summary of *Van de Kamp*, the court held: "Turner
here has not made a sufficient showing to overcome either the defense of
absolute immunity or qualified immunity." We interpret the court's ruling
as a grant of qualified immunity for Oliver's March 2020 statement to the
school district trustees.

As we consider this issue, we need to understand exactly what Turner
claims. The complaint set out the relevant facts about Oliver's alleged
statement to the school district trustees. It then listed as one of the five
"Counts" for Oliver's liability that Oliver "retaliated against [Turner] for
[the] exercise of his Fifth Amendment rights." Turner argued this in his
briefing in the district court:

> Defendant caused Plaintiff to be fired by falsely telling
> Plaintiff's employer that Plaintiff was subject to a valid
> indictment. The indictment was not valid, since it was based
> solely on the exercise of his right to silence, a clearly-protected
> constitutional right, and since it was unsupported by probable
> cause. Therefore, Defendant violated Plaintiff's constitutional
> rights.

Similarly, Turner argues on appeal that "Oliver's causing Turner to
be fired in retaliation for his taking the Fifth Amendment violated Turner's
constitutional right to silence." Turner contends qualified immunity does
not apply "because Oliver's actions in talking to the school district are not a
part of the discretionary duties of a district attorney." Even if speaking to
the school district trustees was within Oliver's discretionary duties, Turner
then argues the statement clearly violated his constitutional rights.

We first consider whether Oliver established that her March 2020
statement "was within the scope of [her] discretionary authority." *Cherry*

*Knoll*, 922 F.3d at 318.  The answer to that question must be found in the relevant state's law about an official's duties. *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022).  Here, the applicable law is that of Mississippi.  A state statute defines the powers and responsibilities of district attorneys. *See* Miss. Code Ann. § 25–31–11.  Oliver does not argue that her March 2020 statement to the school district trustees falls within one of these statutory duties.  We therefore look elsewhere.

Oliver asserts the March 2020 statement is within her "general job duties."  Oliver argues her disclosure of Turner's indictment facilitated "the appropriate flow of information to and from the public."  That language, quoted in Oliver's brief, is taken from a set of standards developed by a national district attorney association. *See* Nat'l Dist. Att'ys Ass'n, National Prosecution Standards § 2-14.1 (3d ed. 2009).  No Mississippi judicial precedent has been cited to us regarding the authoritativeness of these standards in that state, but we will consider the standards as we evaluate more generally the duties of a prosecutor.

The United States Supreme Court held that "when a prosecutor functions as an administrator rather than as an officer of the court, he is entitled only to qualified immunity." *Buckley*, 509 U.S. at 273 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976)).  According to Oliver, her disclosure serves as "an integral part of a prosecutor's job" and is "a vital public function" of her administrative role because she was communicating the existence of a public record to a public entity. *Id.* at 278 (stating that talking "to the press *may be* an integral part of a prosecutor's job, *see* Nat'l Dist. Att'ys Ass'n, National Prosecution Standards 107, 110 (2d ed. 1991), and . . . may serve a vital public function." (emphasis added)).

No. 23-60165

The standard on which Oliver relies specifically describes the relationship prosecutors should have with the media. *See* Nat'l Dist. Att'ys Ass'n, *supra*, at § 2-14.1 to .8. "An appropriate and professional relationship with the media is necessary to promote public accountability," and therefore "prosecutor[s] should seek to maintain a relationship with the media that will facilitate the appropriate flow of information to and from the public." § 2-14.1. Even if that standard would be recognized in Mississippi in defining relevant duties, Oliver's March 2020 statement was made to school district trustees. Oliver relies on three court opinions that she argues protect prosecutors who made similar statements. We review only the one we find to be most useful.

The one Supreme Court precedent Oliver cites is *Buckley*. There, a prosecutor publicly announced a man's arrest and indictment and discussed relevant facts during a press conference. *Buckley*, 509 U.S. at 262. The Supreme Court rejected absolute immunity for the statements, *id.* at 277, but stated that when talking to the press, "a prosecutor is in no different position than other executive officials who deal with the press, and . . . qualified immunity is the norm for them." *Id.* at 278. The Court remanded for consideration of whether qualified immunity would apply. *Id.* at 278–79.

To apply *Buckley* to this case, we start with the allegations in Turner's complaint. The most relevant is this:

> Defendant Oliver carried out further animosity toward [Turner] on March 3, 2020, when she informed trustees of the School District that [Turner] had been validly indicted for the crime of accessory after the fact. Defendant Oliver made this claim for the purpose of getting [Turner] terminated from his position as principal. Defendant Oliver claimed to the School District that [Turner] was guilty of the crime of accessory after the fact, resulting in the School District's terminating [Turner] from his position as Principal.

We interpret this allegation as identifying only one statement — Turner was "validly indicted." When the complaint then alleges that Oliver "claimed . . . [he] was guilty," we conclude it is characterizing what a valid indictment would mean to the trustees. We acknowledge the complaint could be interpreted as alleging a separate statement about guilt, but Turner never informed the district court or this court that there were two statements to consider. The district court's analysis solely concerned "validly indicted," and no error in that court's failure to consider a separate statement about guilt has been argued here. Thus, the sole, possibly actionable statement concerned the indictment.

We next consider how *Buckley* would apply to speaking to the public employer of the person indicted instead of the press. Oliver gave information to school district trustees, who are elected members of a public body. *See* Miss. Code Ann. § 37–7–203. They had a legitimate interest in being informed of the indictment against one of the principals in their district. We see no valid distinction between informing a governmental body with a particular interest in an indictment and informing the public by talking to the media. Oliver's actions were therefore in the same category as making statements to the media.

The separate issue is whether statements to either a public employer or the media are within the discretionary duties of a district attorney. We stated above that qualified immunity requires that a public official have been acting "within the scope of [the official's] discretionary authority." *Cherry Knoll*, 922 F.3d at 318. There has been no argument that prosecutors in Mississippi are prohibited ethically, by statute or otherwise, from discussing indictments with the public. Prosecutors are public officials, and keeping the public informed within some limits must be part of their discretionary duties. We conclude that Oliver's informing the school trustees of the indictment,

even if motivated by malice as plausibly alleged in the complaint, would be within her discretionary duties.

As we stated, the *Buckley* Court did not hold that qualified immunity would apply to statements to the press. Instead, it remanded for further proceedings. *Buckley*, 509 U.S. at 278–79. If a defendant shows that the challenged conduct was within the official's discretionary authority, and we just held that this statement was, then qualified immunity will apply unless the plaintiff establishes: (1) the defendant's conduct violated the plaintiff's constitutional rights, and (2) that right was clearly established at the time of the conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Because both must be shown to deny qualified immunity, the failure to show either will cause qualified immunity to be granted. *Id.* Here, we need consider only the requirement of clearly established law.

A defendant must have had "fair notice that her conduct was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). "If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Id.*

In considering whether there is clearly established law, we define the alleged violative conduct. Turner asserts a district attorney's discussing her supposed violation of a citizen's Fifth Amendment right in obtaining an indictment is itself a Fifth Amendment violation, whether the discussion is with the media or with other public officials. Turner's cited authority for clearly establishing this right, which appears only in his reply brief, falls well short. In that cited precedent, a policeman refused to waive his Fifth Amendment rights when he was called to testify before a grand jury, and he was later discharged for this refusal pursuant to the New York City Charter. *Gardner v. Broderick*, 392 U.S. 273, 274–75 (1968). In the policeman's suit

11

for reinstatement, the Supreme Court invalidated the charter provision because a state may not fire an officer for the sole reason of refusing to waive a constitutional right. *Id.* at 279. The Fifth Amendment "does not tolerate the attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it confers on penalty of the loss of employment." *Id.* The present suit, of course, is not against the school district trustees or the school district for reinstatement. The *Gardner* opinion provides no assistance here.

Turner has offered no authority clearly establishing (or even suggesting) that, if a prosecutor informs an employer of a "valid indictment" of an employee though the indictment should be dismissed as violating the employee's Fifth Amendment rights, the act of informing the employer violates the Fifth Amendment. Even if Oliver misrepresented her actual opinion about the validity of the indictment, qualified immunity does not consider subjective good faith. *Harlow*, 457 U.S. at 815–18. Oliver's actual beliefs and motives do not affect whether qualified immunity applies to her March 2020 statement.

Oliver is entitled to qualified immunity for the constitutional claim regarding her statement to the school district trustees.

## II.     *Malicious Interference with Employment*

Turner also challenges the district court's dismissal of his state-law claim of malicious interference with his employment. There is some discussion in the briefing of the Mississippi Tort Claims Act ("MTCA"), a statute that waives the immunity of the state and its subdivisions from "claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment." MISS. CODE ANN. § 11-46-5(1). The claims now solely are against Turner individually, and thus possible immunity for the state is irrelevant.

Moreover, because an element of the tort is malice, the MTCA itself would be inapplicable anyway since an "employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted . . . malice." MISS. CODE ANN. § 11-46-5(2).[1] Thus, all we need examine is the state-law tort claim against Oliver individually.

A preliminary issue concerns the statute of limitations. The district court held that, because Turner's tort claim against Oliver required at the pleading stage a plausible claim of malice, the one-year statute of limitations under the MTCA did not apply to the claim. *See Springer v. Ausbern Constr. Co.*, 231 So. 3d 980, 989 (Miss. 2017) (explaining MTCA does not apply to tortious interference claim that requires essential element of malice). There is no challenge here to that conclusion.

We now examine the elements of the tort. In Mississippi, the "cause of action for tortious interference with a contract generally will lie against one who maliciously interferes with a valid and enforceable contract." *Levens v. Campbell*, 733 So. 2d 753, 759–60 (Miss. 1999). To succeed, the plaintiff must prove the following:

> (1) that the acts were intentional and willful;
>
> (2) that they were calculated to cause damage to the plaintiffs in their lawful business;
>
> (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); . . .

_____

[1] Although the MTCA defines talking to the media or to an employer when malice is involved as not being within the scope of employment, our prior conclusion that qualified immunity applies to the Section 1983 claim is unaffected by the analysis that follows here.

(4) that actual damage and loss resulted[; and]

[(5)] that the contract would have been performed but for the alleged interference.

*Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 745 (Miss. 2019) (line breaks added) (quotation marks and citations omitted).

The first use of those elements for the tort in a Mississippi precedent may have been in 1960. *See Irby v. Citizens Nat'l Bank of Meridian*, 121 So. 2d 118, 119 (Miss. 1960) (quoting 30 AM. JUR. *Interference* § 55 (1958)). For its authority, the encyclopedia cites two opinions. We consider the one from Texas. *See Tidal W. Oil Corp. v. Shackelford*, 297 S.W. 279 (Tex. Civ. App. — Fort Worth 1927, writ ref'd). Among other statements, that court held that in Texas, "the assertion of a legal right affords no foundation for a recovery of damages, even though it be with malice." *Id.* at 281. That is consistent with an earlier section in the same chapter of *American Jurisprudence*, which provides that by malice "the courts do not have in mind actual or express malice, in the sense of personal feeling," but instead they mean "the intentional doing of a harmful or injurious act without justification or excuse." 30 AM. JUR. *Interference* § 45 (1958). That meaning is brought out in the phrasing of the third element of the tort: malice constitutes the causing of injury "without right or justifiable cause." *Gulf Coast Hospice*, 273 So. 3d at 745. Thus, malice for these purposes is not motive but an absence of right or justification.

The district court concluded Turner's claim failed because of the third element. It held Turner failed to allege that Oliver had no justification for her March 2020 statement:

> This statement was allegedly made in March of 2020, at a time when the indictment against Turner had not yet been dismissed. The Order dismissing the indictment was not entered until October 15, 2020. Therefore, Oliver would have

had a basis for stating that Turner had been "validly indicted." The facts, and presumably the law, had been placed before a grand jury, and that grand jury had determined that probable cause existed for that body to issue an indictment. It cannot be said, therefore, that Oliver's statements were made without any justification.

Our earlier enumeration of the elements explained that the "unlawful purpose" is defined as one "of causing damage and loss." *Levens*, 733 So. 2d at 761. The plausible allegations in this case suffice to claim Oliver made the statements for the purpose as well as the effect of injuring Turner. We then need to decide if the statements were "without right or justifiable cause." We agree with a prior panel of this court when it stated: "the interplay of 'bad faith,' unlawful purpose, and 'without right or justifiable cause' are confusing at the margins of analysis." *Gibson v. Estes*, 338 F. App'x. 476, 477 (5th Cir. 2009).

We find additional guidance about this tort from an article written by a former Mississippi Supreme Court justice. He wrote about the tort's ambiguities and explained that "without right or justification" means there must be some "legitimate interest" in play. James L. Robertson, *The Law of Business Torts in Mississippi (Part II)*, 15 Miss. C. L. Rev. 331, 364–65 (1995). For support, the author cited a federal court opinion, *id.* n.772, that contained this explanation:

> Federal Courts and State Courts, including those of the State of Mississippi have adhered to the principle of law that even if a party "interferes" with the formation or execution of a contract, if he has a legitimate interest therein or a contractual right to perform said act it is privileged and thus not wrongful and actionable.

*Martin v. Texaco, Inc.*, 304 F. Supp. 498, 502 (S.D. Miss. 1969).

We accept this explanation as the most reasonable interpretation relevant to the facts of this case. To apply that standard, we interpret the claim as seeking damages from a district attorney for presenting facts and law to a grand jury, obtaining an indictment whose invalidity other than because of the prosecutor's bad motives was not alleged, and then informing a part of the public with a specific interest in the accused about the indictment. Oliver had a legitimate interest as prosecutor to inform the school trustees of the indictment, whatever her personal malice in procuring and publicizing it. She was not an interloper as to the workings of the grand jury; she was the district attorney — as unfortunate as that may have been for Turner.

We believe one step more should be taken. It is claimed that Oliver informed the school trustees that Turner was "validly indicted." It is certainly arguable that if the indictment were legally invalid, and particularly if Oliver knew that, then the justification for informing the school trustees would vanish. To deal with the possibility, we examine what is in the record.

The district court interpreted "validly indicted" to mean that evidence and law was given to the grand jury and an indictment followed. We go beyond the district court's holding to examine, briefly, uncited Mississippi precedent on what is required for an indictment to be valid. One standard concerns the requirements for a *facially* valid indictment, meaning the form and content of the indictment itself. One explanation was this:

> An indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense.

*Gilmer v. State*, 955 So. 2d 829, 836–37 (Miss. 2007).

Turner made no assertion that the indictment was facially defective. There are other requirements, such as the indictment must be dated, signed

by the grand jury foreman, and filed. *See* MISS. CODE ANN. § 99-7-9; *Wilson v. State*, 904 So. 2d 987, 996 (Miss. 2004). Turner does not discuss any of these or other possible defects that can exist in an indictment, so we leave our review of the caselaw there.

Instead of these categories of defects, Turner argues this: "[d]rawing all inferences in favor of [him], this Court can certainly infer that [he] may be able to prove at trial that . . . Oliver, acting out of malice, caused [him] to lose his employment as a school principal" and that "[n]othing more is required." He contends detailed factual allegations are not required at the pleading stage. While that is certainly true, *see Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014), that does not relieve a party from sufficiently briefing arguments. Indeed, "[a] party forfeits an argument . . . by failing to adequately brief the argument on appeal." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). What Turner has not supported with caselaw, or even discussed, is why Oliver, for all her alleged malice, was not acting with justification to inform school trustees that one of their employees was "validly indicted." Moreover, no argument has been made, beyond that Oliver displayed personal malice — which is insufficient — as to how the indictment was invalid.

We conclude that the district court properly dismissed the claim of a tort of malicious interference with a contract. The parties have addressed another issue, which is whether, if Oliver's statement about the valid indictment was true, that would defeat Turner's malicious interference with contract claim. A Restatement takes the position that there is no improper interference "with [an]other's contractual relation, by giving the third person . . . truthful information." RESTATEMENT (SECOND) OF TORTS § 772 (1979). Given our holding, we do not consider that possibility.

AFFIRMED.