**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

**No. 99-20389**

**MICHAEL P. LEWIS,**

**Plaintiff-Appellant**

**versus**

**DAVID M. FRESNE; ET AL**

**Defendants**

**LOWELL FARKAS; ROBERT A. YOUNG; ROSENFELD,**
**BERNSTEIN & TANNENHAUSER LLP; ERIC P. ROSENFELD**

**Defendants-Appellees**

**Appeal from the United States District Court**
**for the Southern District of Texas**

May 14, 2001

Before GARWOOD, HALL,[1] and BARKSDALE, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

This case requires us to determine whether the Securities Act of 1933 ("the 1933 Act") applies to a 90-day "bridge" loan and whether a single phone call and the mailing of allegedly fraudulent information can be sufficient to establish personal jurisdiction over non-resident defendants. Plaintiff alleges violations of the 1933 Act and Texas state law. The district court granted defendants' motion to dismiss, holding that the plaintiff failed to

_____

[1] Circuit Judge of the Ninth Circuit, sitting by designation.

state a claim under the 1933 Act and that the evidence was insufficient to establish personal jurisdiction over the defendants. We agree with the district court as to the reach of the 1933 Act, but we find that sufficient minimum contacts exist as to all but one of the appellees and reverse the district court's dismissal as to the state law claims.

## I. Facts and Proceedings Below

Appellant Michael Lewis was a customer of the Bear Stearns brokerage house from April 1992 to April 1996. David Fresne was his stockbroker. In 1995, Fresne tried to convince Lewis to buy stock through a private placement in Mad Martha's Ice Cream, Inc. ("Mad Martha's"), a Delaware corporation with business locations in Massachusetts. Fresne sent Lewis a private placement memorandum on a Mad Martha's stock offering, but Lewis refused to buy.

Lewis did agree to Fresne's second suggestion: making a 90-day "bridge loan" to Mad Martha's pending the closing of a private placement of the company's stock. In June 1995, Lewis loaned $650,000 to Mad Martha's. In return, Lewis received a promissory note for $650,000 (the "Note"), which was never repaid, and a pledge of 615,675 shares of Mad Martha's stock, which became worthless when Mad Martha's filed for bankruptcy eight months later. The Note was supposedly secured by, among other things, a first lien on the assets of a Mad Martha's store in Nantucket, Massachusetts. It was to bear interest at a rate of 15 percent per

annum, or $97,500, and that amount was not tied to the performance of Mad Martha's stock.

Lewis claims that the defendants misrepresented the facts surrounding the Nantucket store when he agreed to loan the $650,000. Apparently, the former president of Mad Martha's, Thomas Quinn, entered into the lease for Mad Martha's Nantucket store in his own name instead of Mad Martha's. Even after he was removed by the board of directors, Quinn continued to retain possession of the Nantucket store and operate it as if it were his own store and not Mad Martha's. Mad Martha's unsuccessfully filed suit in an effort to regain control of the Nantucket store. Lewis alleges that the defendants sent him letters and documents falsely stating that Mad Martha's was providing him with a first lien on the Nantucket store when they knew that Quinn was the store's true owner.

The efforts to sell Mad Martha's stock in a private placement failed. On February 27, 1996, Mad Martha's filed for bankruptcy. Lewis filed a complaint in Texas state court alleging breach of fiduciary duty (by Fresne), securities fraud under the Texas Securities Act, violations of the Securities Act of 1933, common law fraud, and civil conspiracy. The case was then removed to the United States district court for the Southern District of Texas. In an August 14, 1996 order, the district court denied Lewis's motion to remand the case to state court and dismissed several defendants from the case on the basis that personal jurisdiction was lacking. This appeal only concerns those defendants: Eric

Rosenfeld; Lowell Farkas; Eric Young; and Rosenfeld, Bernstein & Tannenhauser, LLP.[2]

In an October 6, 1997 opinion, the district court reaffirmed that: 1) Lewis failed to state a claim under the 1933 Act; and 2) the evidence was insufficient to establish personal jurisdiction over the defendants in this appeal. The district court denied Lewis's request to file an amended complaint alleging violations of the Securities Act of 1934. Meanwhile, Lewis eventually settled with the defendants that had not been dismissed in the August 14 order, including Fresne. Following his settlement with Fresne (the last remaining non-dismissed defendant), Lewis submitted an agreed final judgment that was approved by the court on April 19, 1999. Lewis then filed a motion for a new trial as to the defendants dismissed in the August 14, 1996 order. He attached to this motion a statement from Fresne who claimed that he had been acting as an intermediary between Lewis and Rosenfeld. The district court denied the motion citing the prejudice to the defendants (who had been out of the case for three years) and the lack of probative value in Fresne's statement.

II. Standard of Review

---

[2] Lewis's petition also stated a claim against Robert Bernstein and Robert Tannenhauser in their individual capacities. Along with the other defendants in this case, they were dismissed for lack of personal jurisdiction. This Court dismissed the appeal against Tannenhauser and Bernstein in a January 13, 2000 order.

4

This court reviews both the district court's denial of Lewis's motion to remand the case back to state court and its dismissal for want of personal jurisdiction de novo. See Frank v. Bear Stearns & Co., 128 F.3d 919, 921 (5th Cir. 1997) (motion to remand); Jobe v. ATR Mktg., Inc., 87 F.3d 751, 753 (5th Cir. 1996) (dismissal for want of personal jurisdiction). When a trial court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as the trial court did in this case, it must resolve any factual conflicts in favor of the plaintiff. See Stripling v. Jordan Production Co., 234 F.3d 863, 869 (5th Cir. 2000).

The district court's denial of leave to amend the complaint is reviewed for abuse of discretion. See Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927 (5th Cir. 1996).

III. Failure to State a Claim Under the 1933 Securities Act

The 1933 Act states: "No case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v. The district court acknowledged this language, but explained that in limited circumstances the defendant may pierce the pleadings to show that claims otherwise not removable have been pled solely to prevent removal. In its August 14 order, the district court held that the Note was not a "security," and, therefore, Lewis did not have a valid claim under the 1933 Act. In its subsequent opinion,

5

the district court explained that Lewis also failed to state a claim because Lewis only sued under § 12 of the 1933 Act and that portion of the 1933 Act does not apply to non-public transactions.

The burden is on the defendants to show that Lewis's federal Securities Act claim is baseless. This is a heavy burden. Defendants "must show that there is no possibility that plaintiff would be able to establish a cause of action." Lackey v. Atlantic Richfield Co., 990 F.2d 202, 207 (5th Cir. 1993). All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor. See Burchett v. Cargill, Inc., 48 F.3d 173, 176 (5th Cir. 1995).

We decline to address the issue of whether the Note was a "security" under the 1933 Act because we agree with the district court that this was a private transaction. For his 1933 Act claims, Lewis alleged only violations of § 12(1), § 12(2), and derivative liability under § 15.[3] (These correspond to 15 U.S.C. §§ 77l(1), 77l(2), and 77o in the U.S. Code.) Section 12(1) provides liability or recission for the offer or sale of a security without a registration statement. Section 12(2) imposes liability on any person who "offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact."

_____

[3] Section 15 of the 1933 Act imposes derivative liability on "controlling persons" for violations of § 12. Without a violation of § 12, there is no claim under § 15.

6

Section 12 of the 1933 Act does not apply to private transactions. See <u>Gustafson v. Alloyd Co.</u>, 513 U.S. 561, 584 (1995). In <u>Gustafson</u>, the Supreme Court analyzed the legislative history of the 1933 Act to determine that Congress meant for § 12 to apply only to public offerings.[4]

The evidence shows that this was a private transaction. Lewis only agreed to make the loan after receiving and rejecting a *private* placement memorandum. He entered the deal through his own *private* broker. The $650,000 was designed to keep Mad Martha's running until a *private* placement sale of stock could be completed. See <u>Whirlpool Financial Corp. v. GN Holdings, Inc.</u>, 67 F.3d 605, 609 n.2 (7th Cir. 1995) (holding that § 12 did not apply to a transaction involving a private placement memorandum); <u>Vannest & Sage, Rutty & Co.</u>, 960 F. Supp. 651, 654-55 (W.D.N.Y. 1997) (same).

Lewis contends that the district court ignored the "public" aspects of his transaction. He cites to a decision from the Southern District of New York that allowed a plaintiff to sue under § 12 even though his purchase of stock was made pursuant to a private placement memorandum. See <u>Fisk v. Superannuities, Inc.</u>, 927 F. Supp. 718 (S.D.N.Y. 1996). The plaintiff in <u>Fisk</u>, however, alleged in his complaint that he had purchased 50,000 shares out of

---

[4] Although the <u>Gustafson</u> case was brought under § 12(2) and not § 12(1), the language of the majority opinion encompasses *all* of § 12. <u>See, e.g., id.</u> at 581 ("The House Report thus states with clarity and specific reference to § 12 that § 12 liability is imposed only as to a document soliciting the public.").

an offering of up to 4 million shares of common stock.  Id. at 722.

In contrast, Lewis's complaint contends that his 615,676 shares

were represented to be 29% of the outstanding shares of stock.

Thus, Lewis's purchase involved a major stake in Mad Martha's while

the plaintiff in Fisk only bought himself a relatively small stake

in the company.    Two of the criteria for determining if a

transaction is public are the size of the offering and the number

of offerees.  See Koehler v. Pulvers, 614 F. Supp. 829, 842 (S.D.

Cal. 1985).   Accordingly, Lewis fails to state a claim under the

1933 Act because the transaction at issue was a private one that is

not governed by § 12.[5]  We affirm the district court's decision to

deny Lewis's motion for remand and to dismiss his 1933 Act claims.


## IV. Personal Jurisdiction

In addition to his claim under the 1933 Act, Lewis alleges

claims under the Texas Securities Act and common law.  The district

court dismissed these claims  for lack of personal jurisdiction

against the defendants.

---

[5] Lewis also contends that a pledge of stock is an offer or
sale of a security covered by § 12.   He cites this circuit's
decision in Haralson v. E.F. Hutton Group, Inc., 919 F.2d 1014 (5th
Cir. 1991).  The Haralson court held that a plaintiff could assert
a claim under § 12(2) even if the transaction at issue was an
isolated one made pursuant to a private offer.  The 1991 Haralson
decision is not persuasive, however, because it has been overruled
by the Supreme Court's 1995 decision in Gustafson.

The burden is on Lewis to establish the district court's jurisdiction over non-residents. None of the defendants are residents of Texas. Obtaining personal jurisdiction over a non-resident is constitutionally permissible if: 1) the non-resident purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state; and 2) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 211 (5th Cir. 1999). There are two types of "minimum contacts": those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction. General jurisdiction attaches when the defendant's contacts with the forum state are "continuous and systematic." Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994). Lewis does not argue that any of the defendants had continuous contacts with Texas. Instead, he contends that specific jurisdiction is warranted because the defendants' contacts with Texas "arise from, or are directly related to, the cause of action." Id.

Fresne and Rosenfeld were co-chairs of Mad Martha's board of directors. In his petition, Lewis alleges that Rosenfeld participated in a telephone conversation between himself and Fresne that was designed to convince Lewis to make the $650,000 loan. Lewis contends that Rosenfeld failed to correct allegedly false statements made by Fresne during that phone call. He also contends that Rosenfeld prepared and sent loan documents and stock

9

certificates to him in Texas that contained fraudulent misstatements regarding the Nantucket store. Similarly, the petition alleges that Farkas, Mad Martha's president, signed and sent security agreements to Lewis in Texas that fraudulently represented that Lewis would receive a first lien on the Nantucket store as security for his loan.

We believe that this is sufficient evidence of minimum contacts to justify personal jurisdiction. A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted. See Brown v. Flowers Indus., 688 F.2d 328, 332-33 (5th Cir. 1982) (holding that a single telephone call initiated by the defendant was sufficient to confer personal jurisdiction). There have been other cases where mere communications or negotiations with a resident of the forum state were not enough to subject non-resident defendants to the forum state's jurisdiction. See, e.g., Aviles v. Kunkle, 978 F.2d 201, 205 (5th Cir. 1992) (per curiam) (one telephone call and one letter not enough to confer personal jurisdiction).[6] These cases did not,

_____

[6] Farkas contends that he is immune from suit under the "fiduciary shield" doctrine because all of his allegedly fraudulent acts were performed when he was acting as a corporate officer of Mad Martha's. This is not a case where plaintiff's claim rests on nothing more than Farkas's status as a corporate officer. Instead, Lewis contends that Farkas deliberately misled him so that Mad Martha's and Farkas would get the money needed to keep Mad Martha's afloat until the private placement. Therefore, the fiduciary shield doctrine should not apply. "[T]he shield is removed if the individual's personal interests motivate his actions . . . ." Darovec Marketing Group, Inc. v. Bio-Genics, Inc., 42 F. Supp.2d 810, 819 (N.D. Ill. 1999).

10

however, involve an intentional tort. Lewis contends that all of the defendants intentionally defrauded him by lying about the ownership of the Nantucket Mad Martha's store. Recently, this Court explained that "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 213 (5th Cir. 1999). The "actual content" of Rosenfeld's and Farkas's communications to Lewis shows purposeful availment of the benefits and protections of Texas law. See Collins v. Gospocentric Records, 2001 WL 194985, *2 (N.D. Tex., Feb. 22, 2001) (citing Wien for proposition that communications to plaintiff in Texas giving rise to intentional tort are sufficient to satisfy minimum contacts standard).

Moreover, we find minimum contacts between Rosenfeld's law firm, Rosenfeld, Bernstein & Tannenhauser LLP, and the forum state. "[A] partner's actions may be imputed to the partnership for the purpose of establishing minimum contacts . . . ." Sher v. Johnson, 911 F.2d 1357, 1366 (9th Cir. 1990).

We also conclude that maintenance of this action against Rosenfeld, Farkas, and Rosenfeld, Bernstein & Tannenhauser, LLP in Texas will not offend traditional notions of fair play and substantial justice. Texas has a significant interest in providing a forum for this action because the injured party, Lewis, is a Texas resident. See Wien Air, 195 F.3d at 215; Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 779-80 (5th Cir. 1986).

11

We agree with the district court, however, that there is insufficient evidence of minimum contacts between defendant Young and the forum state.  Young was the president and sole shareholder of Vineyard Shops, Ltd. ("VSL").  In 1993, he sold the Mad Martha's Ice Cream Stores to Mad Martha's in return for a down payment and a note for the balance of the purchase price.  Mad Martha's still owed VSL money when Lewis made his loan in 1995.  Neither VSL nor Young was a party to the transaction between Lewis and Mad Martha's.  Lewis's only allegation against Young is that he signed a letter that was forwarded to him in Texas stating that VSL's lien on the Nantucket store was being assigned to Lewis.  Young neither prepared the letter nor sent it to Lewis.   This conduct is not enough for Young to reasonably anticipate that he would be haled into court in Texas.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 296 (1980).

## V. Leave to Amend

The district court rejected Lewis's motion for leave to file an amended complaint.  Lewis sought to assert an additional claim under § 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act") and to allege additional facts learned during discovery. Leave to amend "shall be freely given when justice so requires." F.R.C.P. 15(a).  The district court denied Lewis's motion because

12

it was "untimely and would unduly prejudice Defendants, particularly those who were dismissed . . . in 1996."[7]

Federal Rule of Civil Procedure 15(a) allows a plaintiff to file one amended complaint as a matter of right when the defendants have not filed a responsive pleading. Although the appellees have filed motions to dismiss, "[t]his court follows the prevailing view that a motion to dismiss is not a responsive pleading." Whitaker v. City of Houston, 963 F.2d 831, 834-35 (5th Cir. 1992).

The Whitaker court explained that the Fifth Circuit had adopted the Eleventh Circuit's approach to reviewing motions for leave to amend a complaint after a dismissal. Under this approach, "a plaintiff is allowed to amend under Rule 15(a) with leave of the court-but not as of course-if the district court dismissed only the plaintiff's *complaint*, not his or her *action*." Id. at 835. In August 1996, the district court dismissed Lewis's complaint. According to Whitaker, Lewis cannot amend his complaint as a matter of right; he should only be granted leave to amend if the district court's decision to deny such leave was an abuse of discretion.

---

[7] The district court also denied Lewis's motion to file an amended complaint because it held that the Note was not a "security" under the 1934 Act. Leave to amend does not need to be granted when the amended complaint would not withstand a motion to dismiss for failure to state a claim. See Siray v. Lamson & Sessions Co., 948 F.2d 1037, 1042 (5th Cir. 1991). Because we hold that the district court's decision was justified by Lewis's undue delay in requesting leave to amend, we need not address whether the Note constitutes a "security" under the 1934 Act.

13

Undue delay justifies a district court's decision to deny leave to amend. See Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990). Lewis waited more than one year after the district court had dismissed the various defendants for lack of personal jurisdiction. He offers no explanation for his failure to include a claim under the 1934 Act in his original complaint. Therefore, we hold that there was no abuse of discretion.

**CONCLUSION**

The decision of the district court is affirmed in part and reversed in part. Plaintiff failed to state a claim under the 1933 Act. Plaintiff did establish that defendants Rosenfeld, Farkas, and Rosenfeld, Bernstein & Tannenhauser, LLP had sufficient minimum contacts with the state of Texas. Accordingly, the district court has personal jurisdiction to hear plaintiff's state law claims against these three defendants. We agree with the district court that there is insufficient evidence for it to assert personal jurisdiction over defendant Young. It was not an abuse of discretion for the district court to refuse to permit Lewis to amend his complaint. The parties shall bear their own costs on appeal.

14