# United States Court of Appeals for the Fifth Circuit

———————

No. 24-60080

———————

United States Court of Appeals
Fifth Circuit

**FILED**

December 23, 2024

Lyle W. Cayce
Clerk

Gabino Ramos Hernandez,

*Plaintiff—Appellant*,

*versus*

Phillip Causey,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:17-CV-123

———————————————————————

Before Elrod, *Chief Judge*, Dennis and Higginson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

This appeal arises from a traffic-stop-turned-officer-shooting. After Immigration and Customs Enforcement Agent Phillip Causey shot plaintiff-appellant Gabino Ramos Hernandez, Hernandez sued Causey under 42 U.S.C. § 1983 and *Bivens*. The district court granted Causey's motion to dismiss and denied Hernandez's motion for leave to amend the complaint. Hernandez timely appealed.

The district court correctly recognized that finding the availability of a *Bivens* remedy here would expand *Bivens* to a new context in contravention

No. 24-60080

of the Supreme Court's guidance in *Egbert*. The court also correctly found that, even though Hernandez had properly pled an excessive force claim for the shooting, Causey did not act under color of state law as is required to sustain a claim under § 1983. We accordingly AFFIRM the dismissal of the appealed claims and AFFIRM the denial of leave to amend the complaint as further amendment would be futile.

## I.

On July 20, 2016, Laurel Police Department Officer David Driskell observed Hernandez fail to come to a complete stop at a stop sign. Officer Driskell observed the vehicle behind Hernandez's appeared to have an intoxicated driver; the vehicle was being driven by Hernandez's brother, Jose Mendoza. Officer Driskell stopped both vehicles and initially tried to question Mendoza while Hernandez spent "time standing by and waiting."[1] After verbally requesting clarification on Mendoza's answers several times, Officer Driskell called ICE Agents McGhee and Sharff; the body camera footage showed Officer Driskell asking, "Can you assist me with some Spanish?" to request interpretation services for his questioning of Mendoza.

Officer Driskell then saw Hernandez approaching and shouted, "Do you speak English?" Hernandez responded, "What's the problem?" Officer Driskell indicated Mendoza and replied, "He's drunk." Officer Driskell and Hernandez continued speaking for a few seconds but had trouble understanding each other. Officer Driskell said, "I tell you what, I got somebody who speaks Spanish who is coming to help me, and I'll talk to you then, 'cause I don't understand you. So, hang tight right there, okay?" As the ICE Agents

---

[1] Hernandez describes his amended complaints as "supplemental and amended" complaints. His allegations in prior complaints—such as the First Amended Complaint quoted here—therefore remain live.

arrived, Hernandez left the area of the traffic stop. Hernandez alleges that, at some point around the time of Agent McGhee's arrival, he "decided to leave the scene, initially intending to simply enter his residence, but then deciding to go to his uncle's home nearby."

Officer Driskell observed to Agent McGhee, "He's going down the block! He's running south!" Agent McGhee pursued on foot, shouting, "Get down! Get the f**k down!" Officer Driskell appeared to shine his flashlight at Hernandez. At the same time, other ICE agents, including Agent Causey, converged on the scene while Agent McGhee shouted directions. At minute 17:14 of Officer Driskel's body camera video, a shot is heard on the footage; at 18:03, Officer Driskell arrived on the scene and witnessed Agent Causey shouting, "Man, you shouldn't have put your hand in your f**king pocket!" The district court noted that other law enforcement witnesses corroborated Agent Causey's testimony that Hernandez was reaching into his pocket. Hernandez alleges that he "had his hands raised in surrender" when Agent Causey shot him in the right arm.

Hernandez filed suit on July 20, 2017. Hernandez initially brought claims against Causey under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), 42 U.S.C. § 1983, and Mississippi tort law. He later amended his complaint to allege negligence and intentional tort claims against the United States under the Federal Tort Claims Act. The district court denied summary judgment to Causey on qualified immunity, concluding that there was "a material factual dispute to resolve" as to where Hernandez's hands were positioned and whether Causey's use of force was reasonable.

In 2022, Causey filed for reconsideration, arguing that the Supreme Court's ruling in *Egbert v. Boule*, 596 U.S. 482 (2022), limited *Bivens* claims such as Hernandez's. The district court agreed that post-*Egbert*,

Hernandez's claim presented a new distinct context from prior *Bivens* claims and that Hernandez's claim was now foreclosed. The defendants then moved to dismiss Hernandez's remaining claims against Causey pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted Causey's motion to dismiss from the bench, concluding that, to the extent Hernandez alleged Causey was acting under color of *federal* law, Hernandez's § 1983 claim must be dismissed.  But the court granted Hernandez leave to file a motion to amend his complaint to replead his § 1983 claim that Causey acted under color of *state* law.

Hernandez then moved for leave to file a Fourth Amended Complaint, but the district court denied the motion, holding that Hernandez "fail[ed] to state an unlawful seizure claim against Causey and d[id] not allege that Causey was acting under color of state law for purposes of his excessive force claim." The district court found that Hernandez alleged no facts to support an inference that Officer Driskell conspired with ICE to request interpretation services as a pretext, including no facts to show that Causey was part of such an alleged agreement. The district court held that Hernandez had failed to plead a constitutional violation because he did not allege that he was improperly detained prior to ICE's arrival and did not allege the initial traffic stop lacked probable cause. The court held that although Hernandez had plausibly alleged a claim that Causey violated his right to be free from excessive force, any amendment would be futile because § 1983 "does not apply to 'actions [] taken pursuant to federal law by federal agents.'" Although federal officials may act under color of state law in rare circumstances, such as when the federal officials acted "in conspiracy with state officials," *Hindes v. FDIC*, 137 F.3d 148, 158 (3d Cir. 1998), the district court found that the

amended complaint did not plead any such circumstances. The court dismissed all claims against Causey with prejudice.[2]

Hernandez filed a notice of appeal from the court's partial judgment on February 15, 2024. On March 12, 2024, the district court certified its partial judgment for immediate appeal pursuant to Federal Rule of Civil Procedure 54(b), dismissing all claims against Causey and concluding that there was "no just reason to delay the appeal of Hernandez's claims against Causey under *Bivens* and [42] U.S.C. Section 1983." The notice of appeal matured on March 12, 2024. *Brown v. Mississippi Valley State Univ.*, 311 F.3d 328, 332 (5th Cir. 2002). Only Hernandez's claims against Causey in his individual capacity are at issue in this appeal.

## II.

"We review a district court's dismissal of claims under Federal Rule of Civil Procedure 12(b)(6) de novo." *Clyce v. Butler*, 876 F.3d 145, 148 (5th Cir. 2017). A court must dismiss a complaint as a matter of law when the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court "accept[s] well-pleaded facts as true" and "view[s] them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986)). Dismissal is appropriate if the facts pled are not enough to state a facially plausible claim for relief. *Leal v. McHugh*, 731 F.3d 405, 410

---

[2] Hernandez's intentional tort claims against the United States remain pending before the district court.

(5th Cir. 2013). Plausibility is not akin to probability, but instead, "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Walker*, 938 F.3d at 735 (quoting *Iqbal*, 556 U.S. at 678). "All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001).[3]

## III.

Hernandez appeals the district court's dismissal of his *Bivens* claim against Causey, arguing that his claim does not present a new *Bivens* context.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the Supreme Court authorized damages actions against federal officers for arresting an individual in his home and searching the home "from stem to stern" without a warrant. 403 U.S. 388, 389 (1971). *Bivens* "broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernández v. Mesa*, 589 U.S. 93, 99 (2020). In the decade following *Bivens*, the Supreme Court expanded *Bivens* actions to encompass a former congressional staffer's sex discrimination claim under the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979), and a federal prisoner's Eighth Amendment claim based on inadequate healthcare, *Carlson v. Green*, 446 U.S. 14 (1980).

But over the next 42 years, the Supreme Court "declined 11 times to imply a similar cause of action for other alleged constitutional violations." *Egbert v. Boule*, 596 U.S. 482, 486 (2022); *see also Hernandez*, 589 U.S. at 102. Reflecting on *Bivens* actions, the Supreme Court has explained that *Bivens*

---

[3] In reviewing the district court's determinations de novo, we consider the allegations presented in the proposed Fourth Amended Complaint in addition to the operative complaints.

was decided at a time where, "as a routine matter with respect to statutes, the Court would imply causes of action not explicit in the statutory text itself." *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017). But "[i]n cases decided after *Bivens,* and after the statutory implied cause-of-action cases that *Bivens* itself relied upon, the Court adopted a far more cautious course before finding implied causes of action." *Id.* "[E]xpanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 135 (quoting *Iqbal*, 556 U.S. at 675). The Court's precedent has "made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Egbert*, 596 U.S. at 486. "Congress is best positioned to evaluate 'whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government' based on constitutional torts." *Hernandez*, 589 U.S. at 101 (2020) (quoting *Abbasi*, 582 U.S. at 134). "[I]f [the Supreme Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert*, 596 U.S. at 502.

Hernandez claims that his "case is distinguishable from *Egbert*" because "when Causey shot Plaintiff herein, he was actively participating as a law enforcement officer in a purely local law enforcement operation" while "Egbert was performing his duties as a Border Patrol officer to secure the border." He claims 28 U.S.C. § 2680(h) and the FTCA show a Congressional intent for *Bivens* actions by entitling "the victim of an assault and battery by a law enforcement officer . . . to a *Bivins* [sic] action." He raises the same grounds in his reply brief. Section 2680(h), however, does not contain language authorizing *Bivens* actions. As for the FTCA, the Supreme Court has previously held that the provision in question "does not suggest . . . that Congress intended for a robust enforcement of *Bivens* remedies. . . . It is not a license to create a new *Bivens* remedy in a context we have never before addressed." *Hernandez*, 589 U.S. at 111 n.9 (internal quotation marks and

citation omitted). Hernandez's claim must instead be analyzed under the typical *Bivens* rubric.

The Supreme Court has "framed the inquiry as proceeding in two steps." *Egbert*, 596 U.S. at 492. First, we must determine whether Hernandez's claim

> presents a new Bivens context—*i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action." *Id.* (cleaned up). The Supreme Court has previously detailed "differences that are meaningful enough to make a given context a new one": "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 582 U.S. at 139–40. The Court's "understanding of a 'new context' is broad." *Hernandez*, 589 U.S. at 102. Second, if the claim implicates a new context, "a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492 (cleaned up). Although the "Court has not defined the phrase 'special factors counselling hesitation,'" it has explained "that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 582 U.S. at 136. And the Court's recent decision in *Egbert* makes clear that a *Bivens* action should not proceed where "there is *any* rational reason (even one) to think that *Congress* is better suited" to make that determination. *Egbert*, 596 U.S. at 496.

In applying the Supreme Court's precedent disfavoring *Bivens* actions, we have limited *Bivens* claims to three narrow circumstances:

> (1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment, *see Bivens*, 403 U.S. at 389–90, 91 S.Ct. 1999; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

*Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020). Outside of these three narrowly defined categories, "[v]irtually everything else is a 'new context.'" *Id.*

Hernandez seems to argue that his claim falls within the first, original *Bivens* context. In *Bivens*, the plaintiff alleged that federal agents from the Federal Bureau of Narcotics violated his Fourth Amendment rights with an unlawful search—searching his home without a warrant or probable cause—and excessive force—handcuffing him in front of his family. *Bivens*, 403 U.S. at 389. Here, both the type of defendant and type of unconstitutional conduct differ from *Bivens*.

Hernandez brings his claim against an ICE agent. The Court in *Egbert* held that "the Judiciary is comparatively ill suited to decide whether a damages remedy against any Border Patrol agent is appropriate." *Egbert*, 596 U.S. at 495. Unlike the Federal Bureau of Narcotics, which falls under the Department of the Treasury, both ICE and Border Patrol fall under the Department of Homeland Security—a "new category of defendants." *See Abbasi*, 582 U.S. at 135 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). Although this circuit has not reached the question of whether to apply *Bivens* to ICE agents, other circuits have held that ICE agents are new defendants

for the purposes of *Bivens*. *See Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194 (11th Cir. 2016) (no *Bivens* remedy in immigration context); *Tun-Cos v. Perrotte*, 922 F.3d 514 (4th Cir. 2019); *Barry v. Anderson*, No. 22-3098, 2023 WL 8449246 (3d Cir. Dec. 6, 2023); *see also De La Paz v. Coy*, 786 F.3d 367 (5th Cir. 2015) (declining to extend *Bivens* to CBP agents for illegal stops and arrests).

In addition, the circumstances of the alleged constitutional violations in this case are "meaningfully different" than those in *Bivens*. While Bivens's home was searched without a warrant, Hernandez was legally stopped for a traffic violation. Bivens claimed there was no probable cause to detain him; Hernandez claims Causey's use of force in pursuing Hernandez was unconstitutionally excessive. We have recognized in the context of *Bivens* claims that "'[j]udicial guidance' differs across the various kinds of Fourth Amendment violations—like seizures by deadly force, searches by wiretap, *Terry* stops, executions of warrants, seizures without legal process ('false arrest'), seizures with wrongful legal process ('malicious prosecution'), etc." *Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019). We explained in *Cantú* that just as "[n]o one thinks *Davis* . . . means the entirety of the Fifth Amendment's Due Process Clause is fair game in a *Bivens* action," even a violation of the same clause of the same amendment does not authorize a *Bivens* action if the factual circumstances are different. *Id.* at 422. We have held that a claim where a Department of Homeland Security officer drew a gun and threatened the plaintiff, *Byrd v. Lamb*, 990 F.3d 879, 880 (5th Cir. 2021), and a claim where Veterans Affairs police put the plaintiff in a chokehold, *Oliva*, 973 F.3d at 440, presented new contexts under *Bivens*. In both cases, we declined to extend *Bivens* to encompass these Fourth Amendment excessive force claims.

In *Egbert*, the Supreme Court noted that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the

Executive to provide, 'an alternative remedial structure.'" 596 U.S. at 493 (quoting *Abbasi*, 582 U.S. at 137). Alternative remedies existed for the plaintiff in *Egbert*: under 8 C.F.R. § 287.10, the Department of Homeland Security was required to "investigate[] expeditiously" any "[a]lleged violations of the standards for enforcement activities" reported by "[a]ny persons wishing to lodge a complaint." 8 C.F.R. § 287.10; *Egbert*, 596 U.S. at 497. This same grievance procedure applies here because ICE is part of the Department of Homeland Security. Causey also correctly points out that Congress has authorized the Secretary of the Department of Homeland Security to investigate "noncriminal allegations of misconduct" and "impose disciplinary action on any employee of U.S. Immigration and Customs Enforcement." 6 U.S.C. §§ 253–254. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 596 U.S. at 498.

Finally, Hernandez points to the FTCA's waiver of sovereign immunity for certain tort suits. He argues that because the Westfall Act modified the FTCA to create an exception to the FTCA's exclusivity provision for "suits against federal employees for constitutional violations," this is akin to Congressional authorization for his *Bivens* claim. But this is a misreading of the statute. The Supreme Court has explained that the FTCA "is not a license to create a new *Bivens* remedy in a context we have never before addressed" but instead "left *Bivens* where it found it." *Hernandez*, 589 U.S. at 111 n.9.

Hernandez's claim does indeed present a new context for *Bivens*—it implicates new defendants, presents a different basis for a Fourth Amendment violation, and has an alternative remedial structure provided by Congress. The district court properly dismissed the *Bivens* claim against Causey.

## IV.

Hernandez also appeals the district court's dismissal of his § 1983 claim. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## A.

At oral argument, Hernandez's counsel argued that the stop, questioning, and request for translation all amounted to a pretextual seizure separate from the excessive-force claim arising from the shooting. But Hernandez's briefing does not address the district court's finding that Hernandez failed to allege that he "was improperly detained pending the arrival of ICE agents." **ROA.2077.** "[T]he Fourth Amendment protects against detention, not questioning." *United States v. Pack*, 612 F.3d 341, 350 (5th Cir.), *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010). In fact, although Hernandez states "the pretext alleged was the supposed need for translation assistance," he acknowledges that he is not alleging a pretextual stop.

In general, "[a] party who inadequately briefs an issue is considered to have abandoned the claim." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994); *see Rollins v. Home Depot USA*, 8 F.4th 393, 397–98 (5th Cir. 2021). "To be adequate, a brief must 'address the district court's analysis and explain how it erred.'" *Sec. & Exch. Comm'n v. Hallam*, 42 F.4th 316, 327 (5th Cir. 2022) (quoting *Rollins*, 8 F.4th at 397 n.1); *see Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 751 (5th Cir. 2023) (the appellant should "attempt to rebut [the] judgment"). Where a party's "opening brief barely 'addresse[s] the district court's analysis' and wholly neglect[s] to 'explain how it erred,'" *Smith, etc. v. Sch. Bd. of Concordia Par.*, 88 F.4th 588, 594 (5th Cir. 2023) (quoting *Russell*, 59 F.4th at 751), the party forfeits that argument.

Hernandez's opening brief discussed only "the constitutional right to be free from an unreasonable seizure by the use of excessive force"—that is, the claim arising from the shooting. He did not address the district court's finding that there were "no allegations that Hernandez was improperly detained pending the arrival of ICE agents." Because Hernandez did not explain how the district court's detention-as-seizure analysis erred, his claim is forfeited, if not relinquished. Even if the claim was not forfeited or relinquished, his unlawful detention-as-seizure claim would still fail for the reasons below—Hernandez did not allege that Causey acted under color of state law.

## B.

Section 1983 applies "only when 'the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority.'" *Lindke v. Freed*, 601 U.S. 187, 198 (2024) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)). "[U]nder the 'joint action test', *private* actors will be considered state actors where they are 'willful participant[s] in joint action with the State or its agents'." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (emphasis added) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). Hernandez challenges the district court's dismissal of his excessive-force claim from the shooting under § 1983 on the proposition that the "joint action test" should apply to federal officers as well as private individuals and also argues that the district court erred in requiring evidence of a conspiracy.

"[W]hen federal officials conspire or act jointly with state officials to deny constitutional rights, 'the state officials provide the requisite state action to make the entire conspiracy actionable under section 1983.'" *Knights of Ku Klux Klan, Realm of La. v. E. Baton Rouge Par. Sch. Bd.*, 735 F.2d 895, 900 (5th Cir. 1984) (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th

No. 24-60080

Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754 (1980)). Hernandez points to *Knights* to argue that so long as Causey "willful[ly] participat[ed] . . . in a joint activity with local police," Causey acted under the color of state law. But in *Knights*, the acting authority responsible for the constitutional deprivation was a local school board. "Whether the Board was willing to risk loss of federal funds to allow the Klan to hold their meeting . . . was a decision made under color of state law." *Knights*, 735 F.2d at 900. Hernandez cites other cases applying the joint-action test, but both similarly involve *private* actors working with state actors to deprive a plaintiff of their constitutional rights—and in both, the court still found the private actor did not act under color of state law. *See Earnest v. Lowentritt*, 690 F.2d 1198, 1226 (5th Cir. 1982); *Phillips v. Vandygriff*, 711 F.2d 1217 (5th Cir. 1983).[4]

This case law aligns with *Lindke*'s emphasis that "state action exists only when" the constitutional deprivation "ha[s] its source in state authority." *Lindke*, 601 U.S. at 198 (quoting *Lugar*, 457 U.S. 939).[5] As cases cited

---

[4] Hernandez also argues that *Rodriguez v. Handy*, 873 F.2d 814 (5th Cir. 1989) applied § 1983 to federal Border Patrol agents assisting local law enforcement officials. But *Rodriguez* actually concerns application of the Federal Tort Claims Act and only mentions in passing that the agents "were acting under color of state law and could be found liable under § 1983." *Id.* at 817 n.3. Because no § 1983 claim was briefed before this court in *Rodriguez*, the court's footnote statement, in dicta, is hypothetical.

[5] Hernandez further claims that the Supreme Court authorized suits against federal officers under § 1983 in *Tanzin v. Tanvir*, 592 U.S. 43 (2020). *Tanzin* held that "[b]ecause RFRA uses the same terminology as § 1983 in the very same field of civil rights law, 'it is reasonable to believe that the terminology bears a consistent meaning.'" *Id.* at 48 (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 323 (2012)). Hernandez argues that "[i]t would be quite inconsistent for the Court, on the one hand, to allow damage suits against federal officials under one federal statute by relying on § 1983 jurisprudence . . . but to then disregard important parts of that very same § 1983 jurisprudence so as to shield federal officials from damage suits under § 1983." But this is a fundamental misreading of *Tanzin*, which was concerned with whether a "'government,' under RFRA, extends . . . to include officials." *Tanzin*, 592 U.S. at 47. Looking to § 1983

by Hernandez confirm, a federal officer acting under his agency's authority but assisting a state officer generally acts under color of federal law. *See Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 870 n.8 (10th Cir. 2016) (recognizing a "presumption that where federal and state actors come together, they are acting pursuant to supreme [federal] law."); *Case v. Milewski*, 327 F.3d 564, 567-68 (7th Cir. 2003) ("Case's argument that the [federal] defendants[] ceased to be operating under color of federal law once they left the federally owned [property] is without merit," even when the federal officers cited Case for state crimes); *Cabrera v. Martin*, 973 F.2d 735, 743 (9th Cir. 1992) ("We have not found a single precedent which would support a holding that a federal agency acting under its own guidelines could be considered to have acted 'under color of state law' merely because it was induced by the actions of a state actor . . . .").

Even if we were to apply Hernandez's proposed "joint action test," which is applicable to private actors not federal actors, to determine ICE Agent Causey's liability, willful participation alone is insufficient. Hernandez would still be required to allege some agreement, whether explicit or implicit, between Causey and state officers to deprive Hernandez of his rights in order to claim liability under § 1983. We have held that, to satisfy the joint action test for a *private* actor, a plaintiff must plead "facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents." *Pikaluk v. Horseshoe Ent., L.P.*, 810 F. App'x 243, 247 (5th Cir. 2020) (quoting *Polacek v. Kemper Cnty*, 739 F. Supp. 2d 948, 952 (S.D. Miss. 2010)). Hernandez argues that *Pikaluk* is "nonauthoritative" because it is

---

for guidance, the Supreme Court concluded that it did. This analysis does not speak to the availability of a § 1983 cause of action against federal officials.

unpublished and contradicts prior case law. But our older, published case law actually supports the standard articulated in *Pikaluk*—for example, we looked for "evidence to establish a conspiracy" in *Knights*, 735 F.2d at 900, and affirmed a district court's dismissal of a § 1983 against a private actor when "the evidence was insufficient to show that [the private actor] and the [state actors] had agreed to commit an illegal act" in *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir. 1989).

Hernandez argues that we did not explicitly search for a conspiracy in the more recent private-actor case *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309 (5th Cir. 2019). But the issue in *Cherry Knoll* was whether the pleadings were sufficient to state a claim that a private actor was a "willful participant in joint action" with state actors in the complained-of deprivation. *Id.* at 319–20. The district court "determined that . . . [the private actor] should be dismissed because it was not part of a conspiracy." *Id.* at 316. But we found that several specific allegations in the pleadings, including the fact that the private actor "was hired by the City to handle all aspects of the City's acquisition of property from the various landowners affected," combined with a long history of interactions between the private and state actors, were sufficient to state a claim. *Id.* at 319–20. Our decision in *Cherry Knoll* reflects the requirement that a plaintiff must plead some type of agreement to pursue a § 1983 claim against a private actor.

Applying § 1983 liability to a *federal* actor requires further allegations that place the constitutional deprivation under state rather than federal law. Where the federal actor could have derived their authority to act under federal law, the consensus of circuit courts is that § 1983 necessitates evidence of a conspiracy between the federal actor and a state actor to deprive the plaintiff of his rights under color of *state* law. *See Hindes*, 137 F.3d at 158 ("[F]ederal officials are subject to section 1983 liability . . . where they have acted under color of state law, for example in conspiracy with state

officials.”); *Strickland ex rel. Strickland v. Shalala*, 123 F.3d 863, 868 (6th Cir. 1997) (“Without proof of . . . a conspiracy, the federal officials cannot be found to have acted under color of state law.” (cleaned up)); *Olson v. Norman*, 830 F.2d 811, 821 (8th Cir. 1987) (“Where federal officials conspire with state officials . . . they may be held liable” under § 1983.). We agree. Although the conspiracy need not be explicit, a § 1983 plaintiff suing a federal actor must show some evidence of an agreement between the federal and state actors to undertake the unconstitutional acts.

Hernandez points to his allegation that “there was a pretextual request for translation assistance” and argues this is sufficient to allege such an agreement. But his claims are conclusory. His proposed amended complaint states that “Causey[] was aware” of “the pretext of a need for translation assistance to question any Hispanic male.” In support, he states that Officer Driskell was able to use a few Spanish words to communicate with Mendoza and administer a breathalyzer before the ICE officers arrived and that this implies pretext. Even if Officer Driskell’s call to ICE was pretextual—and the fact that some words of Spanish and English were exchanged is not enough to support this inference—Hernandez’s allegations do not support an agreement with Causey. Crucially, Hernandez’s proposed complaint admits that Causey not only was called in by other ICE agents but then also was instructed to pursue Hernandez by ICE Agent McGhee. As the district court correctly observed:

> [N]owhere in his proposed fourth amended complaint does Hernandez allege any *facts* that Causey came to an agreement or meeting of the minds with Laurel police officers to seize Hernandez—much less to shoot him. In fact, each allegation concerning the shooting focuses solely on Causey’s conduct, which gives rise to the inference that the decision to shoot Hernandez was Causey’s decision alone, not the result of some prior agreement.

Federal officers who are called in to assist a state officer can be liable under § 1983 when there is evidence of a conspiracy to deprive and the constitutional deprivation "ha[s] its source in state authority." *Lindke*, 601 U.S. at 198 (quoting *Lugar*, 457 U.S. at 939). But because Causey did not act under color of state law, and because Hernandez has alleged neither details of a conspiracy between Causey and the state officials nor any agreement with them to use excessive force, much less any state authority directive to do so, the district court properly dismissed Hernandez's § 1983 claims.

\* \* \*

For the foregoing reasons, we AFFIRM the district court's dismissal of both the *Bivens* and § 1983 claims against Causey. We AFFIRM the district court's denial of Hernandez's motion for leave to amend the complaint as further amendment would be futile.

JAMES L. DENNIS, *Circuit Judge*, concurring in part and dissenting in part:

On July 20, 2016, Officer Driskell of the Laurel Police Department pulled over two vehicles, one driven by Plaintiff-Appellant Gabino Ramos Hernandez and another driven by his brother, for routine state law traffic violations in Laurel, Mississippi. Requiring "translation services" for the second time that same day, Officer Driskell called federal U.S. Immigration and Customs Enforcement ("ICE") Agents to the scene.

When the ICE van transporting the *de facto* translators arrived, Hernandez—who was not detained by Officer Driskell (only his brother was)—left the scene by foot in a hurry. Officer Driskell then instructed his translator, ICE Agent McGhee, that Hernandez had "go[ne] down the block! He's running south!" McGhee, in turn, instructed ICE Agent Causey, another potential translator, to pursue Hernandez. Causey complied, chased after Hernandez, and then seized Hernandez by shooting him in the arm, which "obliterat[ed] part of the radius in [his] forearm." Hernandez filed suit against Causey, bringing a *Bivens* claim[1] and a Fourth Amendment excessive force claim through 42 U.S.C. § 1983. No one challenges the district court's ruling that Causey's alleged actions constituted excessive force in violation of the Fourth Amendment.

I agree with the majority that Hernandez's *Bivens* claim is foreclosed by the Supreme Court's decision in *Egbert v. Boule*, 596 U.S. 482 (2022). *Ante*, at 6–11 (majority opinion). However, and with great respect for my esteemed colleagues, I would find that Hernandez has pleaded a § 1983 claim upon which relief can be granted. To plausibly plead that Causey acted under color of state law, rather than federal law, our cases do not require Hernandez

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

to have alleged a conspiracy between the Laurel Police and ICE officers to seize Hernandez. *Ante*, at 15–18 (majority opinion mistakenly imposing that overly exacting standard). Instead, when federal officials either conspire or act jointly with state officials to deny constitutional rights, the state officials provide the requisite state action to support § 1983 claims against the federal officials. *Knights of Ku Klux Klan, Realm of La. v. E. Baton Rouge Par. Sch. Bd.*, 735 F.2d 895, 900 (5th Cir. 1984).

Because I would reverse the district court's dismissal of Hernandez's § 1983 excessive force claim against Causey,[2] I respectfully concur in part and dissent in part.

\* \* \*

Section 1983 authorizes a claim for relief only against persons who acted under color of state law. *See* 42 U.S.C. § 1983. Federal officials who act pursuant to federal law do not act under color of state law, but rather act under color of federal law. *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir. 1978) (holding that § 1983 "provide[s] a remedy for deprivation of rights under color of state law and do[es] not apply [to] defendants . . . acting under color of federal law"). When a federal official acts together with state or local officials, the critical determination is whether she acted under color of state or federal law. On this, the majority and I agree. We diverge, however, on the test that should apply to answer this question.

Contrary to the majority's view, I read *Knights of Ku Klux Klan, Realm of Louisiana v. East Baton Rouge Parish School Board*, 735 F.2d 895 (5th Cir. 1984), to apply the so-called joint action test to federal officers. *Ante*, at 13–

---

[2] I agree with the majority that Hernandez's § 1983 unlawful detention claim is not briefed before us, meaning any challenge to the district court's dismissal of that claim is forfeited. *Ante*, at 12–13.

14. There, we held "when federal officials conspire *or* act jointly with state officials to deny constitutional rights, 'the state officials provide the requisite state action'" for purposes of § 1983. *Knights*, 735 F.2d at 900 (emphasis added) (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754 (1980)). Despite the use of the word "or," the majority reads *Knights* to require a conspiracy and rejects Hernandez's argument that the joint action test applies to federal officers. *Ante*, at 14. In my view, *Knights* explicitly dictates that we find federal officials act under color of state law when the federal government "act[s] jointly with state officials to deny constitutional rights." 735 F.2d at 900. Our cases following *Knights* confirm as much. *See, e.g.*, *Rodriguez v. Handy*, 873 F.2d 814, 817 n.3 (5th Cir. 1989) (noting that Border Patrol Agents assisting local law enforcement officials "were acting under color of state law and could be found liable under § 1983"). Given its significant reliance on out-of-circuit authority, it is apparent that the majority wants our circuit's precedents to conform with some other circuits' precedents, which admittedly do impose a strict conspiracy requirement. *See, e.g.*, *Ante*, at 15 (relying on caselaw from the Seventh, Ninth, and Tenth Circuits that do not align with *Knights*); *Ante*, at 16–17 (similar); *but see Jorden v. Nat'l Guard Bureau*, 799 F.2d 99, 111 n.17 (3d Cir. 1986) (citing with approval *Knights* for the proposition that "federal officials who conspire *or* act jointly with state officials may be liable under § 1983" (emphasis added)). While the pursuit of conformity is an important one, under our rule of orderliness, we are duty bound to apply *Knights'* explication of the law at this stage. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) ("It is a firm rule of this circuit that in the absence of an intervening contrary or superseding decision by this court sitting en banc or by the United States Supreme Court, a panel cannot overrule a prior panel's decision."). I therefore cannot join the part of the majority's opinion that *sub silentio* overturns a prior published panel opinion.

Furthermore, I respectfully disagree with the majority's alternative holding that the joint action test itself requires evidence of a conspiracy, and I find the majority's reliance on an unpublished Fifth Circuit opinion unpersuasive. *Ante*, at 15–16. Specifically, the majority adverts to *Pikaluk v. Horseshoe Ent., L.P.*, 810 F. App'x 243 (5th Cir. 2020) (unpublished), and says "[e]ven if" the joint action test does apply to federal actors, to satisfy that test, "a plaintiff must plead 'facts showing an agreement or meeting of the minds between the state actor and the private actor *to engage in a conspiracy* to deprive the plaintiff of a constitutional right, <u>and</u> that the private actor was a willing participant in joint activity with the state or its agents.'" *Ante*, at 15 (quoting *Pikaluk*, 810 F. App'x at 247) (emphasis added). While that is what *Pikaluk* states, I believe it misstates the standard.

Notably, the panel in *Pikaluk* cited to a district court's opinion as support that the joint action test requires a conspiracy. 810 F. App'x at 247 (citing *Polacek v. Kemper Cnty.*, 739 F. Supp. 2d 948, 952 (S.D. Miss. 2010)). The district court's opinion in *Polacek*, however, cites to *Mylett v. Jeane*, 879 F.3d 1272, 1275 (5th Cir. 1989) (emphasis added), a precedential opinion where our court held "in order to find a private citizen liable under section 1983, the plaintiff must allege and prove that the citizen conspired with <u>or</u> *acted in concert with state actors*." *Mylett*'s recitation of the law jibes with other Fifth Circuit and Supreme Court precedents, which hold "under the 'joint action test,' private actors will be considered state actors where they are [merely] 'willful participant[s] in joint action with the State or its agents.'" *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)); *see also Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 319 (5th Cir. 2019) ("Under Supreme Court precedent, to act under color of state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents." (citations and quotations

omitted)); *accord O'Handley v. Weber*, 62 F.4th 1145, 1159 (9th Cir. 2023), *cert. denied*, 144 S.Ct. 2715 (mem.) (2024) (explaining how the joint action test can be satisfied either by showing a conspiracy *or* by showing willful participation in joint action). Accordingly, I respectfully disagree that the joint action test *requires* allegations of a conspiracy. And to the extent a non-binding opinion of our court—*Pikaluk*, 810 F. App'x at 247—holds otherwise, I would clarify that the correct standard is found in *Cornish*, 402 F.3d at 550 (quoting *Dennis*, 449 U.S. at 27) and *Mylett*, 879 F.3d at 1275.

Applying the joint action test derived from binding precedents to the facts of this case, I would find that Hernandez plausibly alleged that translator Causey acted under color of state law when he seized Hernandez with a gunshot/excessive force. Neither the majority, the district court, nor the Government point to any federal law or regulation that Causey acted pursuant to when he came to the scene as Officer Driskell's translator, when he began to chase after Hernandez who was leaving a state law traffic investigation, or when he eventually shot Hernandez to seize him. To the contrary, the Government disavows that the ICE Agents were on the scene to perform immigration operations—they were only there as the Laurel Police Department's translators to accomplish the state's purpose of enforcing its traffic laws. *Stypmann v. City & Cnty. of San Francisco*, 557 F.3d 1338 (9th Cir. 1977) (holding that a towing company acting at the behest of a police officer to accomplish the state's purpose of enforcing its traffic laws acted under color of state law) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974))). Further still, according to Officer Driskell, the ICE translators were an "additional tool in his toolbox" and he had relied on them in the past for translation assistance when stopping Hispanic people. The level of interdependence manifested in this case by Laurel Police Department Officer Driskell, acting pursuant to state law, instructing ICE Agents to partake in a local police matter as translators and then to pursue and seize

Hernandez. Causey followed that instruction and seized Hernandez by shooting him in the arm, in contravention of the Fourth Amendment's guarantee that individuals be free from an unreasonable government seizure by the use of excessive force. *Knights*, 735 F.2d at 900 (holding federal officials act under color of state law when the federal government "act[s] jointly with state officials to deny constitutional rights").

Viewing the alleged facts in the light most favorable to Hernandez leads me to conclude that Causey was a "willful participant in joint action with the State or its agents." *Dennis*, 449 U.S. at 27. I would reverse the district court's dismissal of Hernandez's § 1983 excessive force claim against Causey. Still, for the reasons assigned by the majority, I agree that we must affirm the district court's dismissal of Hernandez's *Bivens* claim. I respectfully concur in part and dissent in part.